United States Courts
Southern District of Texas
FILED

SEP 1 0 2004

Michael N. Milby, Clerk of Court

2004 SEP 10 PM 5:25

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| RALPH WHITE MERCHANDISING, INC., and RALPH WHITE, | § § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. H-03-2075 |
| v. | § | |
| | § | |
| MEGA LIFE AND HEALTH INSURANCE CO., and RICHARD MCMURRAY, | § § § | |
| Defendants. | § | |
| | § | |
| | § | JURY TRIAL DEMANDED |
| | § | |
| | § | |
| | § | |

### PLAINTIFFS' REPLY TO DEFENDANT MEGA LIFE ND HEALTH INSURANCE CO.'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs Ralph White Merchandising, Inc. ("RWM") and Ralph White file this

Response to Defendant MEGA Life and Health Insurance Co.'s ("MEGA") Motion

for Summary Judgment and would show the Court as follows:

### I.    FACTUAL BACKGROUND

Plaintiffs filed this suit because of the misrepresentations and fraud used by

defendants to induce them to purchase a policy from Mega Life and Health Insurance

(hereinafter "Mega Life.") This case has its geneses in a lawsuit filed by a former

-1-

employee, Danny Thomas, against plaintiffs Ralph White and Ralph White Merchandising. Mr. Thomas sustained injuries during his employment. He sued plaintiffs alleging claims of an unsafe workplace and negligence. Plaintiffs, in an attempt to protect against this very type of employee lawsuit, had purchased a policy known as an Occupational Accident Policy from defendant Mega Life. Richard McMurray as an agent for Mega Life suggested that plaintiffs purchase the policy, which was considered by Mega Life as an alternative to Workers' Compensation. Because plaintiffs were non-subscribers to the Texas Workers Compensation, they waived many of their legal defenses to a lawsuit such as the one brought by Mr. Thomas when they elected to purchase the policy in lieu of workers compensation.

Plaintiffs believed that by purchasing the Occupational Accident Policy they were protected from employee lawsuits.

The particular policy at issue was sold to Ralph White Merchandising, which was a d/b/a for the individual Ralph White. See Ex. 1, Ralph White depo., pg. 31-32 and Ex. 2, Ellen Koranek depo pg. 51-52. Ralph White Merchandising complied with Mega Life's instructions regarding the policy and paid the premiums demanded by Mega Life. See Ex. 3, Lori Smith depo. pg. 14, 21-22, 25-28. Ralph White Merchandising and Ralph White purchased the policy because they understood that the policy would protect them from being sued. See Ex. 1, Ralph White depo., pg.

15-16, 21, 51-52, 78 and Ex. 2, Ellen Koranek depo, pg. 42-45. This belief was based on the representations made by defendants to induce them to purchase the policy and the plain language contained in the document entitled "Rights and Responsibilities" that Mega Life provided with the policy. See Ex. 1, Ralph White depo., pg. 15-16, 21, 51-52, 78 and Ex. 2, Ellen Koranek depo, pg. 42-45.

After the lawsuit was filed, plaintiffs notified their agent Richard McMurray. See Ex. 1, Ralph White depo., pg. 27, 35-36, 42-43, 49, 52-56. Richard McMurray had been plaintiffs' agent for 14 years. See Ex. 1, Ralph White depo., pg. 14, 55-56 and Ex. 2, Ellen Koranek depo., pg. 32-33. After they were sued, plaintiffs learned that the waiver of right to sue language contained in the "Rights and Responsibilities" document was not effective under Texas law. See Ex. 1, Ralph White depo., pg. 45. Because the waiver language was not effective, plaintiffs were left with no alternative but to try to settle the lawsuit with Mr. Thomas since they could not effectively defend the lawsuit, having waived their legal defenses by opting out of the workers' compensation system. See Ex. 1, Ralph White depo., pg. 59-60 and Ex. 2, Ellen Koranek depo., pg. 53-54.

The following facts were admitted by Defendant Mega Life:

1.      Mega Life provided the policy and the release language to their agent Richard McMurray who in turn provided it to plaintiffs. See Ex. 3, Lori Smith depo.,

pg. 26, 54-56 and Ex. 6, Response to Request for Admissions No. 9.

2.    Richard McMurray was authorized by Mega Life to act on its behalf. See Ex. 3, Lori Smith depo., pg. 54-56, 63.  Mega Life did not ever reprimand McMurray or indicate that McMurray acted outside the scope of his authority.  See Ex. 3, Lori Smith depo., pg. 56.

3.    The "Rights and Responsibilities" document provided with the policy contained a waiver of an employee's right to sue.  See Ex. 3, Lori Smith depo., pg. 22-23.  The document states "If, however, you choose to participate .... and to waive any and all other causes of action ,claims, rights, and demands that you could make against the Company, its successors, assigns, employees, officers, directors, shareholders, agents and clients." See Ex. 3, Lori Smith depo., pg. 22-23 and  Ex. 4, Occupational Accident Policy and Rights and Responsibilities page signed by former employee Danny Thomas. (hereinafter "Rights and Responsibilities Document") at pg. 2.

4.    The "Rights and Responsibilities" document provided with the policy was not effective under Texas law.  See Ex. 3, Lori Smith depo., pg. 23 and Ex. 6, Responses to Request for Admission Nos. 6 & 7.

5.    Mega Life knew the "Rights and Responsibilities" document provided with the policy was not effective under Texas law.  See Ex. 3, Lori Smith depo.,

pg. 23.

6.    Mega Life did not obtain a legal opinion regarding whether the "Rights and Responsibilities" document that it provided to its insureds or agents complied with Texas law.  See Ex. 3, Lori Smith depo., pg. 24.

7.    Although Mega Life knew the "Rights and Responsibilities" document provided with the policy was not effective under Texas law, there is no evidence that Mega Life made any attempt to inform the plaintiffs.  See Ex. 3, Lori Smith depo., pg. 26-27, 57.

8.    Mega Life knew that a former employee, Danny Thomas, who signed the Waiver document was suing plaintiffs when Mega Life settled with Mr. Thomas.  See Ex. 3, Lori Smith depo., pg. 37.

9.    Although Mega Life knew that plaintiffs were being sued by Mr. Thomas, Mega Life did not contact plaintiffs and inform them that it had reversed its prior decision to decline to pay Mr. Thomas' medical expenses.  See Ex. 3, Lori Smith depo., pg. 38-42, 57.

10.    Although Mega Life knew that plaintiffs were being threatened with suit and then being sued by Mr. Thomas, Mega Life did not contact plaintiffs and offer to assist them in the defense of the case.  See Ex. 3, Lori Smith depo., pg. 37-41, 50-53, 92-93.

11.     Although Mega Life knew that plaintiffs were being sued by Mr. Thomas, Mega Life did not contact plaintiffs and inform them that it was settling with the former employee.  See Ex. 3, Lori Smith depo., pg. 44,46.

12.     Although Mega Life knew that plaintiffs were being sued by Mr. Thomas, the settlement agreement between Mega Life and the former employee did not protect the plaintiffs or settle the claims of the former employee against the plaintiffs.  See Ex. 3, Lori Smith depo., pg. 46, 51, 93-94.

13.     Although Mega Life's policy was to document all calls it received, the policy was not followed.  See Ex. 3, Lori Smith depo., pg. 81, 95.

14.     Mega Life stopped providing the Occupational Group Accident Policy in May 2001.  See Ex. 3, Lori Smith depo., pg. 19.

15.     Mega Life considered the Occupational Group Accident Policy as an alternative to Workers' Compensation.  See ex. 3, Lori Smith depo., pg. 15.

## II.     ARGUMENTS AND AUTHORITIES

### A.     Defendant Does Not Satisfy the Standard To Obtain Summary Judgment

A motion for summary judgment is designed to test the merits of a position or claim; however, such a motion is not a substitute for trial. In order to obtain summary judgment under F.R.C.P. 56, Defendant must show that there is no genuine issue of

material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c), *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996). The Court must view the facts and inferences from the evidence in the light most favorable to the nonmoving party. *See Crescent Towing v. M/V Anax*, 40 F.3d 741, 743 (5th Cir. 1994). In considering a motion for summary judgment, the Court cannot make credibility determinations, weigh evidence or draw inferences for the movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510-2511 (1986); *Karr v. City of Beaumont*, 950 F.Supp. 1317, 1321 (E.D. Tx 1997). Moreover, bald assertions of ultimate facts are insufficient to support summary judgment. *Gossett v. DU-RA-KEL Corp.*, 569 F.2d 869, 871 (5th Cir. 1978).

Defendant fails to meet the burden imposed by F.R.C.P. 56 and thus it is not entitled to Summary Judgment dismissing Plaintiffs' claims or finding the state law claims preempted.

### B.   Ralph White is a Proper Party

Mega contends that plaintiff Ralph White's claims should be dismissed because he is not a party to the policy with Mega Life. After taking Mr. White's deposition, Mega Life has decided to withdrawn this portion of its Motion for Summary Judgment and it is thus moot. See Ex. 7, Electronic Correspondence from defense

-7-

counsel to plaintiffs' counsel. Ralph White Merchandising was a d/b/a for Ralph White. See Ex. 1, Ralph White depo., pg. 31-32 and Ex. 2, Ellen Koranek depo., pg. 51-52.

### 1. Breach of Contract Claim

Mega's motion with respect to this claim is premised on the belief that Ralph White had no relationship with Mega. However, as the deposition testimony revealed, Ralph White Merchandising was a d/b/a for Ralph White the individual. See Ex. 1, Ralph White depo., pg. 31-32 and Ex. 2, Ellen Koranek depo., pg. 51-52. Furthermore, Ralph White would qualify as a third-party beneficiary because Ralph White Merchandising was a d/b/a for Ralph White and because the explicit language of the Rights and Responsibilities document. See Ex. 4, Rights and Responsibilities document at page 2.

### 2. Defendant Mega Life Owed a Duty to Ralph White

This argument is premised on the same belief – that Ralph White had no relationship with Mega Life. This belief is incorrect. See Ex. 1, Ralph White depo., pg. 31-32.

Additionally, contrary to Mega Life's assertions, the damages incurred by Ralph White as a result of Mega Life's negligent conduct was foreseeable. The language of the release extends protections to a number of entities and individuals,

-8-

such as officers and agents of Ralph White Merchandising. Ralph White falls within these categories and it is reasonable and foreseeable that he would rely on the plain language of the release as well as the representations by Mega Life that he would be protected from suit if the Ralph White Merchandising employees signed the release. See Ex. 4, Rights and Responsibilities document at page 2.

### 3.   Ralph White May Pursue Claims Under ERISA

Ralph White has alternatively alleged a claim under ERISA. Based on the fact that Ralph White Merchandising was a d/b/a for Ralph White and based on the fact that Ralph White was an individual who would benefit from the protections of the release had it been effective as represented, Ralph White falls within the category of individuals entitled to assert alternative claims under ERISA.

In any event, the issue of whether Ralph White is a proper plaintiff under ERISA is a fact question on which plaintiff is entitled to present evidence and witnesses to the court. Regardless of whether this matter is tried to the Court or to a jury, summary judgment is not the appropriate vehicle for resolving fact issues. Moreover, Mega Life offers no evidence that Ralph White is not a proper plaintiff – other than its mistaken belief that Ralph White Merchandising was an incorporated entity at the time the policy was acquired.

-9-

### 4.   Ralph White's Fraud Claim is Viable

The facts established through discovery support a finding of fraud and misrepresentation against defendant Mega Life.[1]

First, In its Motion for Summary Judgment, Mega Life cites the elements of a fraud claim and states that the only missing element is that Ralph White was not injured.  In so doing, Mega Life implicitly admits that the undisputed facts establish the other elements of the cause of action.  Thus, by its argument, if plaintiff establishes an injury, he has established the cause of action.  As revealed by his deposition testimony,  Ralph White was injured by the misrepresentations of Mega Life.  Ralph White was forced to liquidate $120,000 in stock to pay the settlement of Danny Thomas.  See Ex. 1, Ralph White depo., pg. 67-68.

Second, the admissions by Mega Life establish the elements of the fraud and misrepresentation claims and Mega Life's liability to plaintiffs[2].  The evidence and elements are as follows:

•     **a material representation** – Mega Life admitted that it prepared the language of the "Rights and Responsibilities" document.  See Ex. 3, Lori Smith depo., pg. 15.

_____

[1] These facts are also applicable to Ralph White Merchandising's fraud and misrepresentation claims.

[2] The analysis of the fraud elements and evidence applies to both Ralph White individually and Ralph White Merchandising, the company.

This document contained the representation that if the employee signed the document, the company, and various other entities, including its officers and agents, could not be sued. See Ex. 3, Lori Smith depo., pg. 23, 46-48 and Ex. 4, Rights and Responsibilities document.

• **false when made** – The "Rights and Responsibilities" document provided by Mega Life with the policy was not effective under Texas law because it did not meet certain conditions established by the Texas Supreme Court. See Ex. 6, Responses to Request for Admissions Nos. 6 & 7. These conditions were established as early as 1993 – shortly after Ralph White Merchandising purchased its first policy and shortly after Mega Life began selling Occupational Accident Employee Welfare Benefit plans. See Ex. 1, Ralph White depo., pg. 14-16 and Ex. 3, Lori Smith depo., pg. 20, 28; *See also Dresser Industries, Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508-509 (Tex. 1993); *Littlefield v. Schaefer*, 955 S.W.2d 272, 275 (Tex. 1997); *Lawrence v. CDB Services, Inc.*, 44 S.W.3d 544 (Tex. 2001). Despite the fact that it did not meet the conditions set forth by the Texas Supreme Court, Mega Life continued to sell these policies until May 2001. See Ex. 3, Lori Smith depo., pg. 19.

• **made by a speaker who knew it was false or asserted it without knowledge of its truth** –

Mega Life admitted that it knew the Rights and Responsibilities document that

-11-

contained the waiver of claims against plaintiffs was not effective under Texas law. See Ex. 3, Lori Smith depo., pg. 23. Mega Life admitted that other clients raised this same issue. See Ex. 3, Lori Smith depo., pg. 29. Significantly, although Mega Life was responsible for providing this document to entities and individuals like the plaintiffs, Mega Life made no attempt whatsoever to determine the legality of the document. See Ex. 3, Lori Smith depo., pg. 24. Furthermore, once Mega Life learned that the document was not valid, it never contacted plaintiffs to advise them of the potential legal dangers. See Ex. 3, Lori Smith depo., pg. 57. Had Mega Life done so, plaintiffs could have avoided the problem.

Additionally, Mega Life's agent, Richard McMurray, repeatedly advised plaintiffs that they were protected from a lawsuit by purchasing the Occupational Accident Policy so long as they obtained the employees' signatures on the Rights and Responsibilities page. See Ex. 1, Ralph White depo., pg. 15-16, 21, 51-52, 55-56, 78 and Ex. 2, Ellen Koranek depo., pg. 13-14, 41, 43-44.

•       **the speaker intended it to be acted upon** – Mega Life admitted that its policy was that policyholders were expected to follow Mega Life's instructions and that it was reasonable for plaintiffs to rely on the information provided to them by Mega Life. See Ex. 3, Lori Smith depo., pg. 25. Mega Life clearly knew that plaintiffs were relying on their representations because plaintiffs expressed their concern to

-12-

their Mega Life agent, Richard McMurray, who always assured them that they were protected. See Ex. 1, Ralph White depo., pg. 15-16, 21, 51-52, 55-56, 78 and Ex. 2, Ellen Koranek depo., pg. 13-14, 41, 43-44. At no time has Mega Life filed any type of grievance against Mr. McMurray for exceeding the scope of his authority with respect to his agency for Mega Life. See Ex. 3, Lori Smith depo., pg. 56-57. Mega Life admittedly knew Mr. McMurray was representing them because they filed the necessary paperwork with the State of Texas. See Ex. 3, Lori Smith depo., pg. 54-56.

• **the party acted in reliance on the representation** – Plaintiffs relied on the representations of Mega Life and its agent and as a result were induced to purchase the Occupational Accident Policy rather than Texas Workers Compensation. See Ex. 1, Ralph White depo., pg. 15-16, 21, 51-52, 55-56, 78 and Ex. 2, Ellen Koranek depo., pg. 13-14, 41, 43-44.

• **the party was injured as a result** – Plaintiffs were damaged as a result of their reliance on the representation. Plaintiffs were forced to defend an employee lawsuit, incur attorneys' fees and settle the case to minimize their damages and avoid a jury trial, which had they lost could have bankrupted them. See Ex. 1, Ralph White depo., pg. 59-60 and Ex. 2, Ellen Koranek depo., pg. 53-54. Plaintiffs were able to settle a multi-million dollar demand for $180,000. See Ex. 1, Ralph White depo., pg. 59-60 and Ex. 2, Ellen Koranek depo., pg. 50. Because of the cost of the settlement, the

business was impacted negatively and could not pay its bills. See Ex. 1, Ralph White depo., pg. 68-72 and Ex. 2, Ellen Koranek depo, pg. 55-57, 60-61.

## C.    Ralph White Merchandising's Claims Are Not Preempted

Mega Life contends that Ralph White Merchandising's state law claims are preempted because the claims relate to the administration of an employee welfare benefit plan.[3] At first blush, one might tend to agree with defendant. However upon a closer, careful examination of the claims, the case law affirms that plaintiffs' claims are not preempted.

Plaintiffs' claims stem from allegations of *pre-plan misrepresentations made to induce plaintiffs' to purchase the policy.* Moreover, plaintiffs' claims center around a misrepresentation that was distinct from the benefits (health and wage benefits) provided to the plan participants. Finally, plaintiffs are not participants in the plan.

Defendant would have the Court believe that misrepresentations made prior to the existence of any plan and with the intent of inducing plaintiffs to purchase a plan fall into the same category as misrepresentations made after the plan was in existence. Such is not the case. *See Perkins v. Time Insurance Co.*, 898 F. 2d 470, 473 (5th Cir.

---

[3]To the extent that defendants' preemption arguments are applied to Ralph White as an individual, the arguments, responses and analysis in this section apply to those aspects of defendants' arguments as well.

-14-

1990); *Hubbard v. Blue Cross & Blue Shield Ass'n*, 42 F.3d 942 (5th Cir. 1995); *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985. 989 (10th Cir. 1999); *Wilson v. Zoellner*, 114 F.3d 713, 721 (8th Cir. 1997); *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1467 (4th Cir. 1996); *Morstein v. Nat'l Ins. Servs.*, 93 F,3d 715, 723 (11th Cir. 1996); *Hobson and Master Finishes, Inc. v. Paul Raymond Robinson, et. al.*, 75 Fed. Appx. 949, 953-954 (5th Cir. 2004)(copy attached as Exhibit 8 pursuant to Fifth Circuit Local Rule 47.5 on unpublished opinions.) As is clear from these cases, when plaintiffs' claims result from misrepresentations that induce a party to purchase a plan, the claims have not been considered "related to" the plan.

Additionally, plaintiffs' claims due not seek health and welfare benefits provided under the Occupational Accident Policy. Rather, plaintiffs' seek to recover for the damages they incurred as a direct result of Mega Life's misrepresentations that the Rights and Responsibilities document attached to the plan would provide a basis upon which they could have any negligent suits dismissed were such suits filed by their employees. The misrepresentations upon which plaintiffs' suit is premised are distinct from the type of benefits provided under the policy and are only tangentially related to the benefits provided under the policy to plaintiffs' employees. Mega Life admits this by arguing that the policy was intended to provide only health and welfare

to plaintiffs' employees, not to plaintiffs.  See Ex. 3, Lori Smith depo., pg.46

Furthermore, Mega Life's contention that defense benefits are not available under the policy buttresses the point that this claims does not relate to the policy benefits.  Plaintiffs' damages for defense costs arise from the effect of the misrepresentation – not the policy language.

With respect to ERISA preemption issues, the correct interpretation of the relevant Fifth Circuit case law is one that requires drawing a distinction between cases in which the existence of coverage is in dispute and those in which the dispute is merely over the extent of coverage.  See *Hermann Hospital v. The Central States Southeast & Southwest Areas Health & Welfare Fund*, 962 F.Supp. 993, 997 (S.D. TX 1997)(Where patient has not coverage at all hospital's misrepresentation claim against ERISA plan cannot "relate to" the plan because hospital has no connection to plan beyond the alleged misrepresentation.)  This case is one in which the issue is more closely akin to the existence of coverage rather than the extent of coverage and thus the claims are not preempted.

Mega Life's own arguments support this analysis because Mega Life argues that plaintiffs did not have a relationship with Mega Life.  At her deposition, Ms. Smith testified that Mr. White was not covered by the policy and that it was issued for the benefit of his employees. See Ex. 3, Lori Smith depo., pg. 46.  She also stated

-16-

that Mega Life did not notify the employer because the employer was not party to that settlement. See Ex. 3, Lori Smith depo., pg. 46. Furthermore, Ms. Smith testified that they did not communicate with plaintiffs regarding correspondence from Mr. Thomas' attorney "[b]ecause we were communicating with our claimant regarding the denial of his claim ... The relationship existed between our claimant and Mega." See Ex. 3, Lori Smith depo., pg. 39.

Mega cannot assert on one hand that tort claims are barred by ERISA because plaintiffs seek claims relating to coverage under the policy while on the other hand defend against a liability claim by asserting they had no relationship with plaintiffs. Having taken inconsistent positions, at the very least, Mega has created material issues of fact as to whether the claims are preempted thus making summary judgment inappropriate.

## D.    Plaintiffs' Non-Fraud Claims Do Not Fail as a Matter of Law

First, whether plaintiffs' non-fraud claims are viable turns on material issues of fact. For example, Mega Life contends that it was not contacted about the lawsuit; however, plaintiffs did convey the fact that they were being sued to Mega Life's agent, Richard McMurray. See Ex. 1, Ralph White depo., pg. 27, 35-36, 42-43, 49, 52-56 and Ex. 2, Ellen Koranek depo., pg. 39-41. Furthermore, Mega Life admittedly knew about the potential lawsuit and then the actual lawsuit and went so far as to

-17-

settle "its own potential exposure for wrongful denial of the underlying claim by settling the case while at the same time, failing to inform or include its insured." See Ex. 3, Lori Smith depo., pg. 46 and Ex. 5, Expert Report of David Disiere, pg. 6. Plaintiffs were deprived of any benefit that could have been obtained from defendant's settlement. See Ex. 3, Lori Smith depo., pg. 41, 44, 46, 52, 93 and Ex. 5, Expert Report of David Disiere, pg. 6.

Second, contrary to Mega Life's assertions and self-serving affidavits, Mega Life knew about the existence of the Danny Thomas lawsuit against plaintiffs and took no action whatsoever to protect plaintiffs. See Ex. 3, Lori Smith depo., pg. 37, 41, 44, 46, 52, 93.   Mega Life's conduct "falls below the normal standard of care between and insurer and its insured by denying and then settling claims in a manner which subjects the insured to litigation and liability exposure." See Ex. 5, Expert Report of David Disiere, pg. 6.

Third, the self-serving affidavits of Robert Thomas and Lori Smith are not evidence upon which this Court should rely to decide these issues.  Mere legal conclusions are insufficient to establish the existence of a fact in support of a motion for summary judgment.  *Mercer v. Daoran*, 676 S.W. 2d 580, 583 (Tex. 1984). Furthermore, factual conclusions will not support a summary judgment because such conclusions are not susceptible to being readily controverted.  *Laidlaw Waste Sys.,*

*Inc. v. City of Wilmer*, 904 S.W. 2d 656, 661 (Tex. 1995). Thomas' affidavit is replete with both legal and factual conclusions. See paragraphs 5, 7 and 8 of Thomas' affidavit attached to Defendant's Motion for Summary Judgment. There is no showing whatsoever that Mr. Thomas is an expert on the subject of ERISA or litigation involving claims against insurance companies and their agents. See Ex. 3, Lori Smith depo, pg. 49-50. The mere fact that Mr. Thomas is employed by defendant as Associate General Counsel does not suffice to make him an expert nor has he been listed as an expert witness by defendant. Plaintiffs object to the affidavits to the extent that the statements are legal and factual conclusions.

Obviously at this point in the litigation, it is in Mega Life's best interest to claim that it would have taken different actions, defended the matter and protected plaintiffs. Mega Life's action speak louder that its words – when confronted with the opportunity to actively participate in the underlying case to the benefit of plaintiffs, it chose not to do so. In light of Mega Life's conduct, Mega Life should not be allowed to armchair quarterback the actions taken by plaintiffs to protect themselves. Mega Life made misrepresentations that the Rights and Responsibilities document accompanying the policy would provide plaintiffs with protection from lawsuits. This representation was made to induce plaintiffs to purchase the insurance. Subsequently, Mega Life mishandled a claim by a former employee of plaintiffs, thus

setting in motion the events that led to plaintiffs being sued by their former employee. Then, when Mega Life itself was at risk it secretly settled with the former employee without notifying plaintiffs and leaving plaintiffs exposed to the former employee's claims. See Ex. 3, Lori Smith depo., pg. 38. (Mega Life didn't take any steps to contact Ralph White Merchandising regarding the claim.) See Ex. 3, Lori Smith depo., pg. 52. ( Ralph White Merchandising had no way of knowing that Mega Life would have defended them.)

## III. CONCLUSION

Defendant's Motion for Summary Judgment should be denied. Plaintiff Ralph White has standing to sue Mega Life. Plaintiffs' tort claims are not preempted by ERISA as the claims do not "relate to" the benefits provide for under the policy but rather stem from the misrepresentations by defendants to plaintiffs to induce them to purchase and continue to purchase the Occupational Group Accident Policy. Plaintiffs' tort claims are based on state laws that make no reference to and function irrespective of the existence of an ERISA plan. *Wilson v. Zoellner*, 114 F.3d 713, 717 (8th Cir. 1997). Even if the Court finds that some of plaintiffs' claims are preempted, plaintiffs' fraud and misrepresentation claims are not. Finally, material issues of fact exist with respect to plaintiffs' claims. Defendant's affidavits are based on legal and factual conclusions and are not proper summary judgment evidence. For the reasons

cited herein, plaintiffs request that the Court deny Mega Life's Motion for Summary Judgment.

Respectfully submitted,

*Judith Batson Sadler*

**Judith Batson Sadler**
Texas State Bar #17511850
Trial Attorney
50 Briar Hollow Lane, Suite 550E
Houston, Texas 77027
(713) 877-8111    Telephone
(713) 877-8188    Facsimile

OF COUNSEL:
**SADLER & SYKES, L.L.P.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been sent to the following by U.S. certified mail, return receipt requested and/or facsimile on this 10th day of September, 2004:

**Emily C.A. Hull**
**Attorney at Law**
**12218 Jones Road, PMB D-138**
**Houston, Texas 77070**

**Stephen D. Howen**
**Figari & Davenport, L.L.P.**
**3400 Bank of America Plaza**
**901 Main Street, LB 125**
**Dallas, Texas 75202-3796**

*Judith Sadler*

Judith Sadler

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **RALPH WHITE** | § | |
| **MERCHANDISING, INC.,** | § | |
| **and RALPH WHITE,** | § | |
| | § | **CIVIL ACTION NO. H-03-2075** |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **MEGA LIFE AND HEALTH** | § | |
| **INSURANCE CO., and** | § | |
| **RICHARD MCMURRAY,** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **Defendants.** | § | |
| | § | |
| | § | |

## AFFIDAVIT OF JUDITH SADLER

| | |
|---|---|
| STATE   OF   TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

BEFORE ME, the undersigned authority, on this day personally appeared Judith Sadler, who being duly sworn stated:

1.   My name is Judith Sadler.  I am an attorney licensed to practice law in Texas and represent plaintiffs Ralph White and Ralph White Merchandising, Inc. in the above-captioned case.  I am competent to make this affidavit and have personal knowledge of the facts herein.

-1-

2.   Attached to this affidavit are true and correct copies of the following documents that are Exhibits to Plaintiffs' Reply to Defendant Mega Life and Health Insurance Co.'s Motion for Summary Judgment in the above-captioned case.

Exhibit 1   -   Ralph White Deposition Transcript
Exhibit 2   -   Ellen Koranek Deposition Transcript
Exhibit 3   -   Lori Smith Depostion Transcript
Exhibit 4   -   Occupational Accident Policy
Exhibit 5   -   Plaintiffs' Expert Witness Report of David Disiere
Exhibit 6   -   Responses to Request for Admissions
Exhibit 7   -   Electronic Correspondence from Defense Counsel to Plaintiffs Counsel
Exhibit 8   -   *Hobson and Master Finishes, Inc. v. Paul Raymond Robinson, et. al.*, 75 Fed. Appx. 949

Further affiant sayeth not.

_____
JUDITH SADLER

SWORN TO AND SUBSCRIBED before me by Judith Sadler on this the 10th day of September, 2004 to certify which witness my hand and official seal.

LISA LINDA LOVERDI
MY COMMISSION EXPIRES
December 20, 2007

_____
LISA L. LOVERDI
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

AFFIDAVIT OF JUDITH SADLER                    -2-